**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**SAMUEL HAYWOOD MYLES,**

      **Plaintiff,**

v.                                         **Civil Action No. 1:06cv97
(Judge Keeley)**

**MARY BARBER, A. GONZALEZ,
AND D. GILL,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This case was initiated on June 21, 2006, by the filing of a civil rights complaint. The plaintiff was granted permission to proceed as a pauper on July 18, 2006, and filed an Amended Complaint on August 21, 2006. This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.02 and 28 U.S.C. §§ 1915A and 1915(e).

## I.  The Amended Complaint

In the amended complaint, Plaintiff asserts that the incidents giving rise to his claim occurred at the Hazelton Penitentiary ("USP Hazelton") in Bruceton Mills, West Virginia. On or about July 1, 2005, Plaintiff began working in the prison commissary. Plaintiff asserts that although he was assigned to the commissary, he was required to do jobs for three different departments, commissary, laundry and safety. Moreover, Plaintiff asserts that Defendant Mary Barber ("Barber"), head of the safety department, never once "came forward to speak when spoken to or to say [thank you]" to Plaintiff for the work he did.

On December 7, 2005, Plaintiff asserts that he and another commissary worker were informed that there was stock on the back dock that needed to be brought into the commissary. While moving the stock, Plaintiff and the other inmate were approached by Barber. Barber told

Plaintiff and the other inmate that when they completed their current assignment, they were to move three 55 gallon drums to the hallway outside the door to the safety department. Plaintiff said "you're welcome" several times with no response from Barber. Eventually, however, Barber heard Plaintiff and asked him to repeat what he had said. Plaintiff did so. Barber then informed Plaintiff that she was not a child and that there was no need for Plaintiff to chastise her. Plaintiff told Barber that he was not chastising her, but that in the five months he had worked in the commissary, she exhibited rude behavior by failing to speak to the him and by failing to thank him for the work he did. Moreover, Plaintiff informed Barber that she had a bad attitude. Plaintiff asserts that this conversation took place at approximately 12:30 p.m.

At 1:00 p.m. that same day, Plaintiff was approached by a staff member and escorted out of the commissary. Plaintiff was told that those orders came from the Associate Warden, D. Gill, and the Trust Fund Supervisor, A. Gonzalez. Because he was no longer assigned to any work detail, Plaintiff approached his Unit Counselor about other institutional employment. Plaintiff was told that he would have to find another institutional job. After talking with his Counselor, Plaintiff filed a request to be assigned a job as a compound orderly. On December 13, 2005, Plaintiff was assigned a job as a compound orderly.

Plaintiff filed a request for administrative remedy regarding his lost commissary job alleging that he was retaliated against for exercising his First Amendment Right to free speech. Plaintiffs' administrative remedy was denied. Plaintiff was told that his removal from his commissary job was due to "institutional needs."

Plaintiff brings suit in this Court against the above-named defendants alleging that he was retaliated against for exercising his First Amendment right of free speech. Plaintiff seeks

monetary, compensatory, and exemplary damages against the defendants for the alleged violation of his constitutional rights. Plaintiff also seeks certain records from the custodian of records at USP Hazelton that he alleges are material to his case.

## II. Standard of Review

Because Plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

## III. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with

---

[1] Id. at 327.

respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[2] and is required even when the relief sought is not available. Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth, 532 U.S. at 741, n. 6.

The Bureau of Prisons ["BOP"] makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at USP-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete

---

[2] Porter, 534 U.S. at 524.

each level of the process in order to properly exhaust his administrative remedies.

Here, Plaintiff asserts that he filed a remedy that was denied. Therefore, it appears that Plaintiff began the administrative remedy process with regard to his claim. However, Plaintiff does not assert that he appealed the adverse ruling. Perhaps more telling, Plaintiff later asserts that to dismiss his claim "for failure to file or follow each grievance to its conclusion would be to punish Plaintiff for what the law plainly allowed him to do, as such would be a due-process violation of the most basic sort." Amended Complaint at 11. Thus, it appears that Plaintiff's claim of retaliation has not been fully exhausted and could be dismissed on that basis.

However, § 1997e(c)(2) provides "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." Accordingly, because exhaustion is not entirely clear in this case, the undersigned has also considered Plaintiff's claim on the merits.

**B. Retaliation**

In order to sustain a claim based on retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). Additionally, a plaintiff alleging that a government official retaliated against her in violation of a constitutional right must demonstrate, *inter alia,* that she suffered some adversity in response to her exercise of protected rights. American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993). In this case, Plaintiff alleges that he was retaliated against for exercising his First Amendment right to speak freely.

5

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." The First Amendment also guarantees an individual the right to speak freely. See New York Times v. Sullivan, 376 U.S. 254, 273 (1964). However, "First Amendment rights, like many other rights, are circumscribed in the prison setting." Thaddeus-X v. Blatter, 175 F.3d 378, 390 (6th Cir. 1999). In fact, the Supreme Court of the United States has specifically found that a prison inmate retains only those First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

Moreover, because First Amendment law is particularly context-driven, the Court must examine the speech, the setting in which it occurred, and the action taken. Thaddeus-X, 175 F.3d at 388. For example, "[s]tanding in a city park (the classic "public forum") at a rally, a citizen is free to say almost anything without interference from the government . . ." Id. However, "[s]tanding in his office at a state agency, an employee is free to speak up about matters of public concern," but his "governmental employer enjoys wide latitude in limiting other speech to enable the office to function properly and efficiently." Id. at 389 (quotations omitted). Finally, "[s]tanding in his prison cell in a prison, an inmate is quite limited in what he can say," and his jailor "can impose speech-limiting regulations that are reasonably related to legitimate penological interests." Id. (quotations omitted).

Here, Plaintiff asserts that he was unhappy with the fact that one of his employment supervisors never spoke to him, even when spoken to, and failed to thank him for his work. Therefore, Plaintiff's claim is analogous to an employer/employee First Amendment retaliation claim. "[A] public employer contravenes a public employee's First Amendment rights when it

discharges or refused to rehire [the] employee or when it makes decisions relating to promotion, transfer, recall, and hiring based on the exercise of that employee's free speech rights." Ridpath v. Brd. of Gov.'s, 447 F.3d 292, 316 (4th Cir. 2006) (citing Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)) (quotations omitted). In order to show that a retaliatory employment action violated a public employee's free speech rights, the employee must show that he spoke as a citizen, "not as an employee, on a matter of public concern." Id. (citing McVey v. Stacy, 157 F.3d 271 (4th Cir. 1998)).

Assuming, *arguendo*, that Plaintiff was discharged from his commissary employment based on his conversation with Barber,[3] Plaintiff fails to state a First Amendment retaliation claim. Plaintiff was not speaking as a citizen on a matter of public concern. Instead, Plaintiff's speech merely involved a personal grievance between himself and one of his supervisors. Moreover, while Barber's actions may have been rude as Plaintiff suggests, Plaintiff's actions could be viewed as insubordinate. And, like any other employer, the Bureau of Prisons ("BOP") was free to terminate Plaintiff's employment for his insubordinate actions. In fact, in the prison setting, where an inmate is the employee and a correctional officer is his supervisor, it seems even more important that the BOP take such action or risk undermining the authority of staff. An inmate's institutional employment, like most other employment, is terminable at will. There is no right to prison employment, and certainly no right to any particular job. Jobs must be earned and maintained in prison just as they are on the outside.

In these circumstances, Plaintiff's speech was not constitutionally protected and Plaintiff has failed to establish the first prong of a First Amendment retaliation claim. Accordingly, the

---

[3] Plaintiff was told that he was discharged because of "institutional needs."

7

complaint should be dismissed.[4]

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that Plaintiff's complaint be **DISMISSED with prejudice** for the failure to state a claim.

Within ten (10) days after being served with a copy of this Report and Recommendation, and party may file written objections with the Clerk of Court. The written objections shall identify those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

IT IS SO ORDERED.

The Clerk is directed to mail a copy of this Order to the *pro se* plaintiff and counsel of record, as applicable.

DATED: October 10, 2006.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

---

[4] Because the undersigned finds that Plaintiff fails to state a claim and recommends that his complaint be dismissed, Plaintiff's request for records in support of his case is moot.